IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|   |   |   |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 2:07-cv-02621-JPM-tmp |
| 786 SOUTH LLC, and TRIPOLI II, INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the question of whether successor liability should be imposed on Defendant Tripoli II, Inc. ("Tripoli II") for alleged race discrimination, sex discrimination, and unlawful retaliation by Defendant 786 South LLC ("786 South").  After careful consideration of the record and the testimony from the April 26, 2010 hearing, the Court holds that Tripoli II may not be held liable as a successor.

**I. Background and Procedural History**

This case concerns allegations of race discrimination, sex discrimination, and unlawful retaliation at an International House of Pancakes restaurant on Union Avenue ("Union Avenue IHOP") in Memphis, Tennessee.  (See Am. Compl. (Docket Entry ("D.E.") 18).)  The discriminatory acts are alleged to have

1

occurred in 2005 and 2006. (Id. at 3-6.) At that time, 786 South owned and operated the Union Avenue IHOP. (See Def. Tripoli II's App. of Mat. Facts in Supp. of Mot. for Summ. J. (D.E. 52-1) Ex. B, Hassan Halaby Aff. ("Halaby Aff.") 1.)

The Equal Employment Opportunity Commission ("EEOC") filed the instant suit on September 27, 2007. (See Compl. (D.E. 1).) On November 29, 2007, 786 South sold its IHOP franchise license to Tripoli II. (Halaby Aff. 1.) Tripoli II owned and operated the Union Avenue IHOP thereafter. (Id.) The EEOC does not allege that any discrimination or retaliation occurred at the Union Avenue IHOP under Tripoli II's ownership. (See generally Am. Compl.) Nevertheless, the EEOC joined Tripoli II as a defendant under the theory of successor liability on August 26, 2008.[1] (Id. ¶ 5.) On January 11, 2010, Tripoli II moved for summary judgment, arguing that it cannot be held liable as a successor because it lacked actual notice of the suit. (See D.E. 52.) The EEOC responded in opposition on February 17, 2010. (D.E. 58.) The Court denied Tripoli II's motion for summary judgment on March 11, 2010. (D.E. 61.)

The Court held a hearing on the issue of successor liability on April 26, 2010. (See D.E. 81.) Present for the EEOC were Carson Owen, Esq., Kenneth Anderson, Esq., and William

---

[1] The EEOC and 786 South settled on March 29, 2010. (See D.E. 64.)

2

Cash, Esq.  Present for Tripoli II were Kern Lewis, Esq. and Susan Hutchison, Esq.

## II. Successor Liability

Successor liability in the employment discrimination context derives from federal labor law.  <u>Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.</u>, 503 F.2d 1086, 1090 (6th Cir. 1974).  The Sixth Circuit has held that courts must apply a three-pronged balancing test when deciding whether successor liability should be imposed:  (1) the interests of the defendant-employer; (2) the interests of the plaintiff-employee; and (3) the goals of federal policy.  <u>Cobb v. Contract Transp., Inc.</u>, 452 F.3d 543, 554 (6th Cir. 2006) (<u>citing</u> <u>MacMillan</u>, 503 F.2d at 1091).  The test is not to be applied mechanically; rather, the question of successor liability must be answered "on a case by case basis."  <u>Id.</u>

The Sixth Circuit has also articulated nine factors that courts may consider when applying the three-pronged balancing test.  <u>MacMillan</u>, 503 F.2d at 1094.  The nine factors are:

> (1) [W]hether the successor company has notice of the charge; (2) the ability of the predecessor company to provide relief; (3) whether the new employer uses the same plant; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially the same supervisory workforce; (6) whether the new employer uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [the defendant] uses the same machinery, equipment and

>methods of production; and (9) whether [the defendant] produces the same product.

Id. The Cobb court cautioned that "all nine [MacMillan] factors will not be applicable in each case" and emphasized that the "ultimate inquiry always remains whether the imposition of [successor liability] . . . would be equitable and in keeping with federal policy." Cobb, 452 F.3d at 554.

### III. Analysis

Tripoli II argues, inter alia, that it cannot be held liable as a successor because it lacked actual notice of the suit and because there is insufficient continuity of business operations between Tripoli II and 786 South. The Court addresses each argument in turn.

#### a. Notice

In its order denying Tripoli II's motion for summary judgment, the Court held that constructive notice "may suffice under the successor liability doctrine . . . ." (Order Denying Def. Tripoli II, Inc.'s Mot. for Summ. J. (D.E. 61) 6.) Tripoli II contends that it did not have actual notice of the suit. Moreover, Tripoli II argues that it had no duty to inquire about pending lawsuits because 786 South and IHOP's corporate office were obligated to inform Tripoli II of such matters before the closing date. (Hr'g Test. of Hassan Halaby ("Halaby Test.").) In support of its argument, Tripoli points to a specific

4

provision in the contract: "Seller shall provide Purchaser with notice of any threatened suit or proceeding prior to closing date . . . which in any way relates to the Business and its operations." (Hr'g Ex. 1, Agreement for Sale and Assignment ("Agreement") ¶ 5.7.3.)  Husam Aboassi,[2] Tripoli II's area manager until 2008, testified that IHOP's corporate office must notify purchasers of any pending lawsuits. (Hr'g Test. of Husam Aboassi ("Aboassi Test.").)  IHOP did not notify Tripoli II of the instant suit. (Id.)

The EEOC counters that a due diligence clause in the contract gave Tripoli II the right to investigate 786 South's operations.[3] (Agreement ¶ 7.1.)  It also argues that a cursory search of the Court's electronic case filing system would have revealed the EEOC's suit against 786 South. (See Hr'g Test. of Nancy Kincaide.)

Aboassi acknowledged in his testimony that Tripoli II's sole concern was acquiring the Union Avenue IHOP for the lowest possible price. (Aboassi Test.)  Aboassi admitted that Tripoli II performed no due diligence aside from a physical inspection of the store. (Id.)  He explained that Farooq Ahmad, the Union Avenue IHOP's former owner, asked him not to visit the store

---

[2] Aboassi's name is spelled differently on occasion.  The Court uses the above spelling for consistency's sake.
[3] The Court notes that the due diligence clause instructs the seller to "exercise good faith in providing information to the Purchaser and/or his lending institution prior to Closing." (Agreement ¶ 7.1.)

5

because Ahmad did not want anyone to know that the store was being sold. (Id.) Aboassi honored Ahmad's request. (Id.)

The Court concludes that the issue of notice is not dispositive. The EEOC produced no evidence that Tripoli II had actual notice of the instant suit. The evidence shows that while Tripoli II likely could have learned of the suit had it performed due diligence, Tripoli II offered reasonable explanations for the lack of due diligence. See Wheeler v. Snyder Buick, Inc., 794 F.2d 1228, 1237 (7th Cir. 1986) (noting that the seller is "in the best position to prevent the present dilemma . . . it [seller] could have been forthcoming with [the purchaser] in course of negotiations"). The Court next addresses the issue of continuity of business operations.

**b. Continuity of Business Operations**

The Court notes at the outset that many of the MacMillan factors are inapplicable here. The franchise agreement greatly limited Tripoli II's freedom.[4] For example, Halaby testified that Tripoli II did not purchase any equipment or the building from 786 South. Instead, Tripoli II leased them directly from IHOP Corporation. (Halaby Test.) IHOP Corporation also

---

[4] Consistency of product, location, and appearance is a requirement of franchising. See Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 433 (3rd Cir. 1997) ("The essence of a successful nationwide . . . chain is product uniformity and consistency."); see also Bryan P. Couch, Are Franchisees Subject to Personal Jurisdiction in the Franchisor's Home State?, 28 Franchise L.J. 150 (2009) (noting that franchisors desire "uniformity and consistency").

6

mandated that certain core items be included on all of its stores' menus. (Id.)  Thus, Tripoli II had no choice but to "use the same facilities, . . . the same means and methods of production," and to "produce[] the same product."  MacMillan, 503 F.2d at 1094.

The Court must instead focus on the four relevant MacMillan factors, namely (1) whether the successor uses the same or substantially the same workforce; (2) whether the successor uses the same or substantially the same supervisory personnel; (3) whether the same jobs exist under substantially the same conditions; and (4) the predecessor's ability to provide relief. Id.  These factors are discussed below.

As to the first factor, the evidence shows that Tripoli II used substantially the same workforce.  Halaby testified that virtually all of the non-management employees were retained after they completed new applications for employment with Tripoli II.  (Halaby Test.)  Aboassi testified that he modified certain employees' schedules, but that most of the non-management employees stayed on.  (Aboassi Test.)  Accordingly, the Court finds that there is substantial continuity in non-management personnel.

As to the second factor, the evidence shows that Tripoli II did not use the same or substantially the same supervisory personnel.  Halaby testified that Ahmad applied to work for

Tripoli II.  (Halaby Test.)  Aboassi refused to hire Ahmad. (Aboassi Test.)  Similarly, Bobby Khan, the manager who allegedly subjected 786 South's employees to racial and sexual harassment, never worked for Tripoli II.  (Id.)  In sum, Tripoli II hired three new managers and retained only one manager from 786 South.[5]  (Id.)  Accordingly, the Court finds that there is substantial lack of continuity in supervisory personnel.

As to the third factor, the evidence shows that the working conditions greatly improved under Tripoli II.  When 786 South's employees were re-hired by Tripoli II, they were immediately given packets explaining Tripoli II's anti-harassment/anti-discrimination policy.  (Halaby Test.)  Furthermore, every employee had to read the packet and sign a form certifying that he or she understood the policy.  (Id.)  Tripoli II instituted anti-harassment/anti-discrimination training.  (Aboassi Test.) Every employee was required to watch anti-harassment/anti-discrimination videos.  (Id.)  Tripoli II's management discussed its policy at mandatory store-wide meetings.  (Id.)  Tripoli II's management encouraged employees to report any incidents of discrimination or harassment.  (Id.)  Mattie Watson, who worked for both 786 South and Tripoli II, testified that 786 South had no anti-harassment/anti-discrimination policy.  (Hr'g Test. of

---

[5] The lone holdover manager, Victor (last name unknown), is not accused of unlawful conduct.

Mattie Watson.)  Watson also testified that 786 South never offered any anti-harassment/anti-discrimination training.  (Id.) According to Watson, Tripoli II greatly improved the work environment that existed at the Union Avenue IHOP.  (Id.) Accordingly, the Court finds that there is substantial discontinuity in working conditions.

As to the fourth factor, the EEOC failed to provide evidence regarding 786 South's assets during the relevant time period(s).[6]  The EEOC read excerpts from Ahmad's deposition into the record at the hearing.  Tripoli II objected.  The Court provisionally allowed Ahmad's deposition testimony pursuant to Federal Rule of Civil Procedure 32(a)(4)(E).[7]  Ahmad testified that 786 South had approximately $6000.00 in assets as of April 7, 2008.  The EEOC did not offer any evidence regarding 786 South's assets at the time the suit was filed, nor did it offer any evidence regarding 786 South's assets at the time of sale to Tripoli II.  Cf. Musikiwamba v. Essi, Inc., 760 F.2d 740, 750 (7th Cir. 1985) ("[A]n injured employee should not be made worse off by a change in business.  But neither should an injured employee be made better off.").  Accordingly, the Court finds

---

[6] See Finnerty v. Wireless Retail, Inc., 624 F. Supp. 2d 642, 660 (E.D. Mich. 2009) ("[T]here is an open question as to the relevant time period that should be examined when considering whether the predecessor is able to provide relief . . . .").
[7] Ahmad was deposed on April 7, 2008, before Tripoli II was joined as a defendant.  Tripoli II's counsel never cross-examined Ahmad.

9

that this factor weighs against the imposition of successor liability.

### c. Balancing the Equities

The Court must incorporate the four MacMillan factors discussed above into the three-part balancing test from Cobb. Cobb, 452 F.3d at 554. For the purposes of the hearing, Tripoli II concedes (1) the employees' interests in seeking relief for the discrimination they claim to have suffered at the hands of 786 South and (2) the EEOC's interest in eradicating unlawful employment practices. The Court now turns to Tripoli II's interests.

Taken as a whole, the relevant MacMillan factors support a finding that Tripoli II should not be held liable as a successor. There is no evidence that Tripoli II benefitted from the alleged discriminatory employment practices of 786 South.[8] Tripoli II lacked actual notice of the instant suit. Tripoli II never hired any of the 786 South managers accused of discrimination or harassment. Tripoli II took affirmative steps to correct the mistreatment of employees that allegedly occurred under 786 South. There is no evidence that the sale to Tripoli II was an "evasion in the guise of corporate transfers of

---

[8] Aboassi testified that Tripoli II's goal during negotiations was to purchase the Union Avenue IHOP for the lowest possible price. (Aboassi Test.) Tripoli II paid $250,000 for the restaurant. (Id.) The store required extensive repairs, which may have depressed the price. (See Hr'g Ex. 1, Deficiency List for IHOP #4426 – Memphis, TN as of October 10, 2007.)

10

ownership." MacMillan, 503 F.2d at 1092. There is evidence that 786 South is unlikely to be able to provide relief to the affected employees. In light of these factors, the Court finds that the imposition of successor liability would be inequitable. See Cobb, 452 F.3d at 554 ("The ultimate inquiry always remains whether the imposition of [successor liability] . . . would be equitable . . . ."). Accordingly, the Court declines to impose successor liability on Tripoli II.

**IV. Conclusion**

For the foregoing reasons, the Court holds that Tripoli II may not be held liable as a successor.

IT IS SO ORDERED this 8th day of November, 2010.


  __/s/ Jon P. McCalla_____
  JON P. McCALLA
  CHIEF U.S. DISTRICT JUDGE

11